# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-4015

JOHN MCBURNEY, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 24, 2009                                           Decided September 10, 2009)

*Mark J. McBurney*, of Pawtucket, Rhode Island, was on the briefs for the appellant.

*Jeffrey J. Schueler*, with whom *John H. Thompson*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, DAVIS, and SCHOELEN, *Judges*.

DAVIS, *Judge*: U.S. Army veteran John F. McBurney appeals through counsel from a July 17, 2008, Board of Veterans' Appeals (Board) decision that denied his claim for recognition as a former prisoner of war (POW) for VA-benefits purposes. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will affirm the July 2008 Board decision.

## I. BACKGROUND

The parties do not dispute the facts pertinent to this appeal. Mr. McBurney served on active duty from June 1943 to January 1946. One morning in 1944, his company was on patrol in an effort to recapture French territory from German forces. Mr. McBurney's patrol commander ordered him to leave his weapon behind, go to a nearby meadow, and take as prisoner three armed enemy soldiers whom the commander believed were seeking to surrender. Mr. McBurney went unarmed to the meadow as ordered, and after advising the German soldiers that he would take their surrender, the

soldiers communicated that they did not wish to surrender; instead, they relayed to Mr. McBurney that he was their prisoner. After further discussion, a German soldier took hold of Mr. McBurney, but the veteran wrestled away, diving behind a tree stump as a German soldier fired at him. A U.S. soldier fired a warning shot. After dusk, several U.S. soldiers approached Mr. McBurney, and he was rescued.

Before the Court, Mr. McBurney argues that the events of that day rendered him a POW, and the Board decision erred in determining otherwise. He contends that the Board overlooked and overturned six prior favorable VA findings, including three RO "stipulations" that he was "forcibly detained," and that the Board impermissibly reconsidered that issue, already resolved either by the parties or by VA. He further argues that the Board gave insufficient weight to buddy statements, and did not properly explain its denial of reconsideration. Appellant's Brief (Br.) at 5-8, 13-14.

In response, the Secretary contends that the Board correctly interpreted the applicable statute to determine that Mr. McBurney was not a former POW. He further argues that the Board, as VA's ultimate finder of fact, is not bound by VA regional office (RO) determinations or stipulations made at the RO level. Finally, he asserts that the Board did not err in denying the motion for reconsideration.

Mr. McBurney filed a reply brief asserting that the stipulations addressed issues of law and thus were not within the purview of the Board, a finder of fact. The remainder of his reply brief is essentially a reiteration of the points he raised in his first brief.

## II. ANALYSIS

A "former prisoner of war" is a person who, during active service, "was forcibly detained or interned in line of duty . . . by an enemy government or its agents, or a hostile force, during a period of war."[1] 38 U.S.C. § 101(32). The Board did not dispute that German soldiers were a hostile force for an enemy government and that the incident occurred during a period of war. *See* Record (R.) at

---

[1]Section 3.1(y) of title 38, Code of Federal Regulations, implements 38 U.S.C. § 101(32). Here, however, the Board, concerned with an argument that the appellant raised regarding whether the regulation impermissibly narrowed the statute, did not apply the regulation. Instead, it considered whether the statute alone provided a basis to grant Mr. McBurney's claim. R. at 6.

10. Thus, the Board determined that the case turned on whether Mr. McBurney was "detained or interned" within the meaning of the statute. *Id.* The Board concluded that he was not.

Before proceeding to the merits, the Court must first examine the propriety of the Board's consideration of whether the veteran was "detained or interned." Mr. McBurney argues that because VA had already made favorable findings that he was "forcibly detained" and entered into "stipulations" to that effect, the Board impermissibly readdressed that issue sua sponte when it had not been raised or briefed to the Board. The Board similarly erred, he contends, in effectively overturning and ignoring those favorable findings and concessions to which the Board was bound.

A. Board's Consideration of "Forcible Detainment"

*1. Sua Sponte Determinations*

The Court finds no merit in Mr. McBurney's assertion that the Board must limit its analysis to issues raised before it in the Substantive Appeal, briefs, and other arguments. "[T]he Board acts on behalf of the Secretary in making the ultimate decision on claims and provides 'one review on appeal to the Secretary.'" *Disabled Am. Veterans v. Secretary*, 327 F.3d 1339, 1347 (Fed. Cir. 2003). In providing that "one review on appeal," "[t]he Board's consideration of evidence is not limited to that which supports only legal issues raised in the Substantive Appeal, but all matters reasonably raised prior to the Board's decision." *Percy v. Shinseki*, 23 Vet.App. 37, 48 n.5 (2009) (quoting *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991)). "Since its inception, this Court has consistently held that there is 'nothing magic about the statements actually on the Substantive Appeal form, given the VA's nonadversarial process." *Id.* at 47. "Once the Board has jurisdiction over a claim, [ ] it has the authority to address all issues related to that claim." *Jarrell v. Nicholson*, 20 Vet.App. 326, 332 (2006) (en banc).

However, when the Board considers evidence not previously considered by the RO, *see Disabled Am. Veterans*, 327 F.3d at 1347, or when the Board proceeds to address questions or issues that the RO did not previously consider, "the Board must secure a waiver from a claimant or otherwise determine that there would be no prejudice to the claimant by proceeding to adjudicate the question or issue." *Id.*; *see also Bernard v. Brown*, 4 Vet.App. 384, 394 (1993). Similarly, where the Board considers law not previously considered by the RO, the Board is required to notify the claimant and indicate that consideration of this law may result in a decision adverse to the claimant.

*See* 38 C.F.R. § 20.903(b) (2009) (requiring Board to "notify the appellant and his or her representative" of its intent to consider a law not considered by RO, where consideration "could result in denial of the appeal").

Here, the RO previously considered the issue of whether the veteran was a POW and the laws associated with making such a determination. *See* R. at 275-77 (May 2005 RO decision finding that although Mr. McBurney was "forcibly detained by [ ] a hostile force," he "is not recognized as a former [POW], based on the circumstances he experienced during the period he was detained"); *see also* R. at 260-70 (September 2007 Statement of the Case confirming and continuing the findings of the May 2005 RO decision). Further, the Board did not consider any new evidence that the RO had not previously considered; it simply reached a different conclusion as to whether Mr. McBurney was "forcibly detained" when applying the facts to the law. In addition, because the Board did not consider a question that the RO had not previously addressed, the Board was not required to secure a waiver from the appellant or include an analysis of any possible prejudice resulting from its consideration of that question. *See Jarrell*, 20 Vet.App. at 332. Thus, regardless of how the particular issues were framed, it was not an error for the Board to determine the underlying question of whether the veteran had been a POW.

### 2. RO Favorable Findings and Stipulations

Mr. McBurney conceded at oral argument that it is the Board's responsibility to make a determination based on a review of the entire record. *See* 38 U.S.C. § 7104(a) (the Board is required, as the final trier of fact, to make a decision based on consideration of the entire record and all applicable provisions of law); *see also* 38 U.S.C. § 511(a)-(b)(4) ("The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. . . . [Such decisions] are final and conclusive."). He contends, however, that the Board is prohibited from overturning or reconsidering matters already favorably decided by the RO or agreed between the parties.

This Court recently addressed a similar issue in *Anderson v. Shinseki*, 22 Vet.App. 423 (2009). In *Anderson*, the appellant argued that the Board could not disregard favorable findings made by a decision review officer as to the three elements that must be established prior to the

assignment of an extraschedular rating. *Id.* at 426. The Court determined otherwise, noting that 38 U.S.C. § 7104, which defines the Board's jurisdiction, "unlike the Court's jurisdictional statute, contains no limitations on the Board's ability to review favorable findings. Indeed, the Board is permitted to review the entirety of the proceedings below." *Id*. at 428. Thus, *Anderson* held that the Board, as the final trier of fact, is not constrained by favorable determinations below.

As to favorable findings, the Court notes that VA did, at various times, make determinations contrary to those made by the Board in the decision here on appeal. *See* R. at 92 (administrative review of RO decision ("The evidence contained in the claims folder shows that the veteran was detained by three German soldiers for one hour.")); R. at 269 (Statement of the Case ("While the evidence shows you were forcibly detained by a hostile force, you are not considered a former prisoner of war.")); R. at 275 (RO decision (concluding same)). *Anderson* clarifies, however, that in implicitly overturning findings below, the Board did not act outside its scope of authority.

As to Mr. McBurney's argument that the Board could not overturn stipulations, the Court notes preliminarily that the documents Mr. McBurney refers to as such are not clearly VA stipulations, agreements, or concessions. What appears in the record are documents that purport to be a meeting agenda, unsigned by any VA representative, as well as several pages of "yes" or "no" responses unaccompanied by the questions associated with those responses. *See* R. at 122, 124-26.

Regardless, even assuming arguendo that the documents represent agreements between the parties, the Board is no more constrained by those agreements than it is by favorable factual findings. While Mr. McBurney urges this Court to carve a distinction between factual findings and stipulations such that stipulations are immune from Board review, he cites no precedent–nor can the Court discern any–that would allow the Court to limit the Board's jurisdiction in such a manner.[2] Implicit or express agreements between VA and claimants (not involving the Board or courts) remain subject to the Board's de novo review on appeal. *See Anderson*, *supra*.

That is not to say that the Board is free to wholly ignore signed, written agreements entered into between parties with the authority to do so. Just as the Board has a duty on remand to ensure compliance with the favorable terms stated in a joint motion for remand (JMR) or explain why the

---

[2]The Board put Mr. McBurney on notice of the Board's intention to review the entire record de novo at a May 2008 hearing. R. at 45. Mr. McBurney responded that he understood.

5

terms will not be fulfilled, *see Forcier v. Nicholson*, 19 Vet.App. 414, 426 (2006); *Stegall v. West*, 11 Vet.App. 268, 271 (1998), the Board has a duty to ensure compliance with agreements between VA and a claimant, or explain why such terms will not be fulfilled, *see* 38 U.S.C. § 7104(d) (Board must provide a written statement of its reasons or bases on all material issues of fact and law); *Anderson*, *supra*. Here, while the Board did not specifically reference any stipulations, the Board's decision thoroughly explains why the undisputed facts preclude a finding that Mr. McBurney was forcibly detained. In so explaining, the Board implicitly rejected any of the terms allegedly agreed to by the RO and Mr. McBurney on the issue of forcible detainment. The Board's discussion of the evidence and its statement of reasons or bases for its finding that Mr. McBurney was forcibly detained are understandable and facilitative of judicial review. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court").

## B. Application of the Statute

Having determined that the Board properly reviewed de novo the entire record below, the Court will turn to the Board's ultimate finding that Mr. McBurney was not a POW. In its decision, the Board is required to discuss all relevant evidence and all "potentially applicable" laws and regulations. *See* 38 U.S.C. § 7104(d); *see also Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001) (noting that the Board need only discuss relevant evidence). The Court reviews the Board's interpretation of a statute de novo. *Cypert v. Peake*, 22 Vet.App. 307, 308 (2008).

When interpreting a statute, the starting point is the plain language. *See Bradley v. Peake*, 22 Vet.App. 280, 287 (2008). As described above, pursuant to section 101(32), to be considered a former POW, a person must have been "forcibly detained or interned." "To Detain" means "[t]o keep under restraint or in custody" or "to keep from proceeding; keep waiting; delay." WEBSTER'S UNABRIDGED DICTIONARY 541 (2d ed. 2001). "To Intern" means "to restrict or confine within prescribed limits, as prisoners of war, enemy aliens, or combat troops who take refuge in a neutral country." *Id.* at 996. "To Intern" can also be defined as "[t]o segregate and confine a person or group, [especially] those suspected of hostile sympathies in time of war." BLACK'S LAW DICTIONARY 820 (8th ed. 2004). Although these definitions leave little ambiguity as to the necessity for some restraint or confinement to constitute "internment," "to detain," according to the above

6

definition, means more than one thing, including merely a delay for no set period of time. Adopting that definition, however, would produce absurd results. *Cf. Ramsey v. Nicholson*, 20 Vet.App. 16, 30 (2006) ("[If] 'it is clear that . . . the literal import of the [statutory] text . . . is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results,' the Court will not reach that result."). Indeed, as to the definition of "detain," the Board noted that "it could be argued that [the] veteran was delayed or hindered by the three enemy soldiers"; however, the Board reasoned that "[i]f this were the case, then every soldier who engaged in hand to hand combat with the enemy on the battlefield would necessarily be a former prisoner of war." R. at 14. The Court concludes that the definition of "detain," for purposes of section 101(32), must logically include elements of "restraint" or "custody." The Court's conclusion here is consistent with the Board's interpretation of section 101(32) and the meaning of "detained" and "interned." *See* R. at 11 (Board's interpretation of "detained" and "interned").

Thus, having discerned correctly the meaning of the terms "intern" and "detain," the Court must next determine whether the Board correctly applied the facts of this case to the statute in reaching its conclusion. The Court reviews the Board's application of the facts to the statute under the "clearly erroneous" standard of review. *See Manibog v. Brown*, 8 Vet.App. 465, 468 (1996). As in all cases, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994). The Board's statement of the reasons or bases for its findings must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday*, 7 Vet.App. at 527.

In its decision, the Board analyzed in some detail the various stages of the encounter between Mr. McBurney and the German soldiers. The Board found that Mr. McBurney's initial approach toward and his ensuing discussion with the German soldiers more closely resembled a negotiation than a situation in which he was "detained" or "interned." R. at 11. The Board concluded that "the Germans were *attempting* to detain the veteran, at the same time the veteran was attempting to detain the Germans," but because "neither side achieved [its] goal," there was no actual detention. *Id.* at

7

12. The Board observed that "[a]n attempt to detain is not the same as detaining." *Id*. The Board then determined that Mr. McBurney entered into combat–he "engaged in the fight, wrestling away from the enemy and then evaded enemy gunfire." *Id.* Ultimately, the Board concluded that Mr. McBurney's encounter did not constitute detainment or internment under the meaning of the statute.

The Board's determination that Mr. McBurney was not forcibly detained or interned is supportable based on a review of the legislative history of the statute. *See Ramsey, supra.* Congress added to 38 U.S.C. § 101 a definition for "former prisoner of war" pursuant to the "Former Prisoners of War Benefits Act of 1981" [hereinafter POW Act]. Corresponding statutes included a presumption of service connection for those deemed POWs.[3] *See*, *e.g.*, 38 U.S.C. § 1112; 38 U.S.C. § 1712. Congress recognized that some veterans returning from WWII suffered

> long-lasting and progressive physical and psychological damage attributable to the conditions of internment experienced by former POW's. . . . [B]ecause of the inadequate state of medical knowledge, the effects of various hardships suffered during interment, including the long-term effect of dietary deficiencies and unsanitary conditions and because of the strong desire of former [POWs] to return home as quickly as possible after World War II, [U.S.] repatriation camps may have discharged veterans without close attention to their potential health problems.

S. REP. NO. 97-88, at 8 (1981). The detrimental effects associated with POW internment (e.g., malnutrition, lack of adequate medical care, unsanitary conditions, etc.) concerned Congress. A situation such as this where a servicemember is delayed in movement by a hostile force–even taking into account the power disparity between armed German soldiers and the unarmed appellant–does not give rise to the effects Congress envisioned. That is not to say that the veteran could not be mentally or physically harmed from such an incident; however, Congress considered such instances and made separate presumptions for veterans who had "engaged in combat." *See*, *e.g.*, 38 U.S.C. § 1154(b). The circumstances surrounding Mr. McBurney's encounter with the German soldiers are clearly distinguishable from the circumstances that Congress envisioned when enacting the POW statute.

---

[3]For "former prisoner[s] of war," 38 U.S.C. § 1112 currently requires a 30-day minimum detainment or internment period for a presumption of service connection for certain diseases, including PTSD and post-traumatic osteoarthritis. The POW Act included a compromise between the House and the Senate to reduce the minimum detainment period for a presumption of service connection to certain diseases from six months to 30 days. POW Act, Pub.L. No. 97-37, 95 Stat.935 (codified in part at 38 U.S.C. § 1112).

8

On review of the Board's analysis, the statute and legislative history, and the record, the Court is satisfied that the Board's application of the facts of this case to the provisions of section 101(32) is supported by an adequate statement of reasons and bases and contains no clear error.

## C.  Buddy Statements

Mr. McBurney also argued that the Board erred in its rejection of buddy statements.  The Board noted that "[r]eports by fellow servicemen that the veteran was taken prisoner . . . [are] not . . . factual report[s] but rather a characterization of prisoner status without reference to statutory language or to any official findings."  R. at 14.  The Board thus dismissed the statements as nonprobative.  It is the Board's responsibility to weigh the evidence and make a determination with regard to its credibility and probative value.  *See Washington v. Nicholson*, 19 Vet.App. 362, 369 (2005).  Although the appellant asserts that the buddy statements were probative to establish "detainment," it appears that the facts as to the circumstances of that day are not in dispute.  Thus, while the buddy statements should have been considered probative for the purpose of establishing the events that transpired, the Board did not err in its determination that the buddy statements are irrelevant to the legal determination as to whether the veteran was a "prisoner of war."

## D.  Motion for Reconsideration

In his brief, Mr. McBurney also included a one-sentence argument pertaining to the alleged failure of the Board Chairman to address reasons for denying Mr. McBurney's motion for reconsideration of the Board decision: "In failing to include reasons why McBurney's Motion for Reconsideration allegations (regarding stipulations and sua sponte rulings) were deemed insufficient, the B[oard] violated 38 C.F.R. § 20.1001 [(setting forth requirements for Board Chairman's grant or denial of reconsideration)]."  Appellant's Br. at 13-14.

In this case, the Board Chairman denied reconsideration of the Board decision.  To the extent the Court has jurisdiction over a Chairman's denial of reconsideration, it is limited to denial of a motion for reconsideration alleging new evidence or changed circumstances.  *Compare Romero v. Brown*, 6 Vet.App. 410, 412-13 (1994) ("[W]hether this Court may review the Chairman's denial of reconsideration depends on the basis for the appellant's motion for reconsideration." (citing *Patterson v. Brown*, 5 Vet.App 362 (1993))), *with Mayer v. Brown*, 37 F.3d 618, 619-20 (Fed. Cir. 1994) (holding that the Court's "jurisdiction is limited by statute to review of 'decisions of the Board

of Veterans' Appeals.' . . . An action by the Chairman is not a decision of the [B]oard. . . .[Section 7261 of title 38, U.S. Code] does not independently grant jurisdiction over [actions of the Chairman]. . . . To the extent *Patterson* says otherwise, it is incorrect." (citations omitted)); *see also Murillo v. Brown*, 10 Vet.App. 108, 110-11 (1997) (suggesting that under *Patterson*, *Mayer*, and *Romero*, "this Court might be able to review a denial of a reconsideration motion in connection with which a timely NOA has been filed but only if that motion alleges new and material evidence in the form of relevant service-department records or other changed circumstances"). Mr. McBurney provides no indication that the motion for reconsideration raised new evidence or alleged "changed circumstances." *See Murillo.* Thus, the Court rejects Mr. McBurney's argument.

### III. CONCLUSION

Upon consideration of the foregoing, the Court AFFIRMS the Board's July 17, 2008, decision.