# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-0932

HOWARD E. CHANDLER, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 13, 2010                    Decided August 12, 2010    )

*Thomas E. Riley*, Chadbourne and Parke LLP, of New York, N.Y., with whom *Margaret Bartley,* National Veterans Legal Services Program, of Washington, D.C., was on the brief for the appellant.

*Thomas E. Sullivan*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Gayle E. Strommen*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and GREENE, HAGEL, MOORMAN, LANCE, DAVIS, and SCHOELEN, *Judges*.

LANCE, *Judge*, filed the opinion of the Court.  DAVIS, *Judge*, filed a concurring opinion. KASOLD, *Chief Judge*, filed a dissenting opinion in which GREENE, *Judge*, joined.

LANCE, *Judge*: U.S. Navy veteran Howard E. Chandler appeals through counsel from a March 7, 2008, Board of Veterans' Appeals (Board) decision that denied special monthly pension by reason of being in need of regular aid and attendance of another person, or on account of being housebound.  This Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).  For the following reasons, the Court will reverse the Board's March 2008 decision.

# I. BACKGROUND

## A. The Present Claim

Mr. Chandler served on active duty in the U.S. Navy from 1952 to 1956, during the Korean conflict and, thus, he is a wartime veteran. He has a combined disability rating of 80%, including a 60% rating for prostate cancer. At age 57, VA granted Mr. Chandler a non-service-connected disability pension because his disabilities prevented him from maintaining employment and rendered him permanently and totally disabled. VA granted that pension pursuant to 38 U.S.C. § 1521(a).

At age 71, Mr. Chandler also filed a claim for a special monthly pension under section 1521(e). Mr. Chandler reasoned that 38 U.S.C. § 1513(a) eliminated the need to prove that he has a disability rated as permanent and total now that he is over the age of 65, and he meets the remaining requirements of § 1521(e). VA denied Mr. Chandler's claim. The Secretary asserted that section 1513 was inapplicable to Mr. Chandler's circumstances per VA's interpretation of this Court's precedent in *Hartness v. Nicholson*, 20 Vet.App. 216 (2006). On that basis, the Board denied Mr. Chandler's appeal.

## B. Issue on Appeal

The issue on appeal is whether Mr. Chandler, who is currently receiving a non-service connected disability pension, qualifies for an increased special monthly pension now that he is over the age of 65. This case involves the interplay of two statutes, 38 U.S.C. §§ 1513 and 1521, and the effect of this Court's precedent in *Hartness*. As discussed above, prior to turning 65, the appellant qualified for a non-service-connected pension pursuant to section 1521(a) based upon disability. Under this Court's decision in *Hartness*, now that the appellant is over 65, he would appear to qualify for a special monthly pension at a higher monthly rate. However, the Secretary argues that section 1513(b) should be read to preclude him from receiving the higher special monthly pension because, although he is permanently and totally disabled, he does not have a single disability that is rated permanent and total. In other words, the Secretary's position is that veterans who are over 65, totally disabled, and have started receiving pension prior to turning 65 are to receive a lesser pension than those who are over 65 but not totally disabled when they begin receiving pension. The Court does not adopt this construction of the statute because it would lead to this absurd result, which clearly could not have been the intent of Congress. The dissent takes a position, not advocated by the

2

Secretary, that we should overrule *Hartness*. For the reasons stated below, the Court concludes that principles of stare decisis counsel against overruling precedent that Congress has allowed to stand and the Secretary has relied on for some time.

## C. Statutes

Section 1521 of title 38, U.S. Code, establishes a disability pension for wartime veterans who are totally and permanently disabled, even if the disabilities are not service connected, and regardless of age. This type of pension is generally referred to as a non-service-connected disability pension, and the general provision is contained in 38 U.S.C. § 1521(a), which states:

> The Secretary shall pay to each veteran of a period of war who meets the service requirements of this section [service for 90 days or more during a period of war] *and who is permanently and totally disabled* from non-service-connected disability not the result of the veteran's willful misconduct, pension at the rate prescribed by this section.

(Emphasis added).

The statute then goes on to list in the subsections that follow the amounts that must be paid based on the circumstances of the claimant. The basic monthly payment rates for unmarried and married veterans are in subsection (b) and (c) respectively. The highest monthly pension rate is provided under subsection (d) to veterans "in need of regular aid and attendance." Subsection (e) provides an intermediate pension rate for veterans that are "permanently housebound," but not in need of regular aid and attendance. Specifically, this states:

> If the veteran has a disability rated as permanent and total and (1) has additional disability or disabilities independently ratable at 60 per centum or more, or (2) by reason of disability or disabilities, is permanently housebound but does not qualify for pension at the aid and attendance rate provided by subsection (d) of this section, the annual rate of pension payable to the veteran under subsection (b) [unmarried and no children] of this section shall be $4,340.

"A disability rated as permanent and total" is defined as a single disability rated at 100%. *See* 38 C.F.R. § 3.351(d) (2010). A veteran who is "permanently and totally disabled" is defined as a veteran who is

> (1) A patient in a nursing home for long-term care because of a disability.

> (2) Disabled, as determined by the Commissioner of Social Security for purposes of any benefits administered by the Commissioner.

3

(3) Unemployable as a result of disability reasonably certain to continue throughout the life of the person.

(4) Suffering from–

> (A) any disability which is sufficient to render it impossible for the average person to follow a substantially gainful occupation, but only if it is reasonably certain that such disability will continue throughout the life of the person; or

> (B) any disease or disorder determined by the Secretary to be of such a nature or extent as to justify a determination that persons suffering therefrom are permanently and totally disabled.

38 U.S.C. § 1502(a).

Section 1513 of title 38, U.S. Code, extends the above pension benefits of section 1521 to wartime veterans who are *not* permanently and totally disabled, but who are age 65 or older. This type of pension is generally referred to as a service pension. The general provision is contained in 38 U.S.C. § 1513(a), which states:

> The Secretary shall pay to each veteran of a period of war who is 65 years of age or older and who meets the service requirements . . . pension at the rates prescribed by section 1521 of this title and under the conditions *(other than permanent and total disability requirement)* applicable to pension paid under that section.

(emphasis added).

Section 1513(b), however, also provides: "If a veteran is eligible for pension under both this section and section 1521 of this title, pension shall be paid to the veteran only under section 1521 of this title."

### D. *Hartness*

In *Hartness*, a wartime veteran sought a special monthly pension under section 1521(e) because he was over 65 years of age and permanently housebound, but he did not have a disability rated as permanent and total, i.e., a 100% disability rating. 20 Vet.App. at 217. The Board denied the claim because Mr. Hartness did not have at least one disability rated as permanent and total, per section 1521(e). 20 Vet.App. at 218. The specific question this Court confronted in *Hartness* was whether section 1513 removed the requirement that a veteran age 65 or older have both a total and permanent disability as well as the additional disabling conditions set forth in section 1521(e) to qualify for the pension amount set in section 1521(e). This Court determined that if a veteran is 65

4

years of age or older and conforms to the service requirements of section 1521, the requirement that he or she be permanently and totally disabled or have a disability rated as permanent and total is excluded (i.e., "the section 1513(a) exception"), or put another way, the veteran is, in effect, permanently and totally disabled as a result of his age. In reaching this conclusion, the Court took into account the legislative history of the statutes at issue. The statutory history was ambiguous and sparse, however. The Court nevertheless determined this interpretation was consistent with the statutes.

The Secretary appealed the Court's decision to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). However, before briefs were filed, on November 14, 2006, the Secretary filed a motion to voluntarily dismiss his appeal with the consent of opposing counsel. That motion was granted.

E. VA's interpretation of *Hartness*

On December 22, 2006, VA Fast Letter 06-28 purported to apply the *Hartness* holding to various types of claims that an adjudicator may encounter. For a claim for a pension received from a veteran age 65 or older who is already receiving a non-service-connected disability pension under section 1521, it directs adjudicators not to apply the section 1513(a) exception. This directive to regional office adjudicators is conveyed in a single sentence that contains no explanation as to the reasoning behind it. In essence, it states that the *Hartness* holding, that wartime veterans age 65 or older are not required to have a disability rated as permanent and total in order to qualify for a pension under section 1521(e), does not apply to veterans who were granted non-service-connected pension under section 1521(a) prior to their 65th birthday and, therefore, are already receiving a non-service-connected disability pension. Those veterans are required, per the Fast Letter, to have, inter alia, a single disability rated at 100% to qualify for a pension under section 1521(e) even when they are age 65 or older. In other words, veterans over the age of 65 who are totally disabled under section 1521(a) are treated less generously than similar veterans who are not totally disabled.

5

## II. ANALYSIS

### A. Arguments

Mr. Chandler argues that he is entitled, per this Court's holding in *Hartness*, to a special monthly pension under section 1521(e) because he meets the section 1513(a) age requirement and meets all the requirements of section 1521(e) other than having a single disability rated as permanent and total. He relies on the *Hartness* holding for the contention that he is not required to have a single disability rated as permanent and total.

Mr. Chandler asserts that the Board failed to properly apply the *Hartness* decision to his claim. He argues that *Hartness* clearly establishes that section 1513 entitles veterans age 65 or older without a disability rated as permanent and total to special monthly pension benefits under section 1521(e) if the veteran meets all the remaining requirements regardless whether he or she is already receiving a non-service-connected disability pension.

The Secretary argues that Mr. Chandler is not entitled to the benefit of section 1513. He argues that a plain reading of section 1513(b) provides that if a veteran is eligible for pension under both sections 1513 and 1521, then VA shall only pay pension benefits under section 1521. Here, Mr. Chandler was already receiving a pension under section 1521, so he cannot avail himself of section 1513 as well. He distinguishes *Hartness* by stating that, in *Hartness*, the appellant was not already receiving a non-service-connected disability pension when he applied for service pension benefits under section 1513. The Secretary asserts that certain VA pension benefits, to include those under section 1521(e), are intended only for veterans who are significantly disabled, not for veterans like Mr. Chandler who do not, inter alia, have a single disability rated at 100%.

### B. Analysis

"[A] functioning system of laws must give primacy to the plain language of authorities, not the Secretary's litigation position. Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or — more importantly — veteran can rely on a statute or regulation to mean what it appears to say." *Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006). Even if the Court were to agree with the Secretary — and it does not — that the plain meaning of the language of section 1513(b) means that if a veteran is eligible for pension under both sections 1513 and 1521,

then VA shall only pay pension benefits under section 1521, this would lead to an absurd result that would be patently inconsistent with the intent of the law. *See McBurney v. Shinseki*, 23 Vet.App. 136, 141 (2009); *Ramsey v. Nicholson*, 20 Vet.App. 16, 30 (2006) ("[If] 'it is clear that . . . the literal import of the [statutory] text . . . is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results,' the Court will not reach that result.").

In this case, the Secretary's reading of 38 U.S.C. § 1513(b) would result in some totally disabled veterans over the age of 65 receiving a lesser pension than similar veterans who were not totally disabled. The idea that a group of totally disabled veterans would be treated **less generously** than an otherwise similar group of veterans who were not totally disabled is very difficult to reconcile with the purpose of title 38. In fact, it is not clear what rational basis would support this classification system. *See Reeves v. West*, 11 Vet.App. 255 (1998). In this regard, the Court notes that the Secretary's brief relies on the plain language of the statute rather than arguing that it is ambiguous and that the Court should defer to his interpretation. Secretary's Brief (Br.) at 8-11. Indeed, the only potential policy justification for the precise phrasing of section 1513(b) offered by the Secretary is a "posit" that perhaps Congress intended that section 1513 need not provide "extra protection" for older veterans **who** were not being "unjustifiably" denied pensions under 1521. Secretary's Br. at 11. However, the Secretary's brief makes this assertion in a single sentence that fails to explain why Congress would have intended the troubling result caused by the language of 1513(b).

Contrary to the Secretary's assertion, ruling for the appellant would not render section 1513(b) "meaningless." Secretary's Br. at 9. Even under the appellant's interpretation, section 1513(b) precludes those veterans who are eligible under both 1513 and 1521 (such as the appellant here) from collecting two pensions at the same time. There is no dispute here that the appellant's dual eligibility does not entitle him to be paid twice. Rather, the only question is whether he can be paid a single pension at the higher rate described in section 1521(e) rather than the lower, basic rate.

If the Court were to conclude that the scenario presented in this case demonstrates that *Hartness* was incorrectly decided, then the Court could agree with the dissent to overrule that case and conclude that the Board decision should be affirmed because Mr. Chandler does not meet the

7

criteria for a higher pension under either section 1513 or section 1521. However, three factors counsel against overruling *Hartness*.

First, the Court concludes that *Hartness* was rightly decided in the first instance. Although our dissenting colleagues disagree, the majority does not find that the wording of sections 1513(a) and 1521 is so clear as to mandate reversal of *Hartness*. In fact, the *Hartness* panel found the plain language was clear in support of its decision. The En Banc Court therefore now has the responsibility to interpret the statutes. As explained in *Hartness*, interpreting sections 1513(a) and 1521 such "that a veteran who is 65 years or older and conforms to the service requirements of section 1521 is entitled to a pension at the rates and under the conditions, other than permanent and total disability, required by section 1521" is consistent with the legislative history of those statutes and Congress's intent to provide a pension to veterans over the age of 65 years of age, regardless of disability. *Hartness*, 20 Vet.App. at 220-21; see Veterans Education and Benefits Expansion Act of 2001, Pub.L. 107-103, 115 Stat. 991. Further, as also noted in that decision, this interpretation is "mindful that any ambiguity in interpretation must be resolved in the veteran's favor." *Hartness*, 20 Vet.App. at 221 (citing Gardener, 513 U.S. at 118).

Second, overruling *Hartness* would not make the precise phrasing of section 1513(b) any more meaningful. Assuming that *Hartness* was incorrectly decided, and the majority holds that it was not, i.e., assuming old-age pensions under section 1513 were calculated exactly the same way as disability pensions under 1521 were calculated once the eligibility was established, that result still does not make sense of section 1513(b). There would be no reason for that provision to specify that pensions under 1521 trump those under 1513 if they are calculated in an identical manner once eligibility is established. However, even if there is no difference in result, it is more likely for Congress to state that section 1521 is the default provision because all the details are contained in that section while section 1513 merely creates an additional type of pension, which incorporates section 1521's provisions by reference. In any event, overruling *Hartness* would not clarify the precise phrasing of section 1513(b). Therefore, the Court is not persuaded to overrule *Hartness*.

Third, even if overruling *Hartness* might result in an outcome more consistent with the confusing language of the statute, the time for reconsidering *Hartness* de novo is past. The Supreme Court has said "often and with great emphasis that 'the doctrine of stare decisis is of fundamental

importance to the rule of law.'" *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989) (citing *Welch v. Tex. Dept. of Highways & Pub. Transp.*, 483 U.S. 468, 494 (1987). Pursuant to the doctrine of stare decisis, a Court's precedent should "be respected unless the most convincing of reasons demonstrates that adherence to it puts [the Court] on a course that is sure error." *Citizens United v. FEC*, 130 S. Ct. 876, 911-12 (2010). "Beyond workability, the relevant factors in deciding whether to adhere to the principle of stare decisis include the antiquity of the precedent, the reliance interests at stake, and of course whether the decision was well reasoned." *Montejo v. Louisiana*, 129 S. Ct. 2079, 2088-89 (2009).

In this case, the Court does not find that the Secretary has advanced "the most convincing of reasons" demonstrating that *Hartness* "puts [the Court] on a course that is sure error." *Citizens United*, 130 S. Ct. at 911-12. As discussed in this opinion, the Court concludes that *Hartness* was a well-reasoned decision that produced a logical result and one that veterans and VA have relied on for over four years. Simply put, in difficult cases of statutory interpretation, courts should resolve an issue once and leave it to the legislature to amend the statute if it disagrees. *See Square D. Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 424 (1986) ("Stare decisis is usually the wise policy because in most matters, it is more important that the applicable rule of law be settled than that it be settled right. . . . This is commonly true, even where the error is a matter of serious concern, provided correction can be had by legislation."). Revisiting and reversing issues of statutory interpretation is not likely to produce a result that is substantially more satisfactory than the first result, and the energies of the judiciary are better spent on resolving novel issues when the legislature is fully capable of revising and clarifying the ambiguous law in dispute. *Cf. Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring) ("Whenever decisions of one court are reviewed by another, a percentage of them are reversed. That reflects a difference in outlook normally found between personnel comprising different courts. However, reversal by a higher court is not proof that justice is thereby better done. There is no doubt that, if there were a super-Supreme Court, a substantial proportion of our reversals of state courts would also be reversed."). To the extent that our dissenting colleagues argue that *Hartness* was "wrongly decided," *post* at 18, they fail to explain how the decision is "unworkable" in light of the fact it merely required the Secretary to pay defined benefits to an easily identifiable class of claimants. Furthermore, it contains no attempt

9

to demonstrate that *Hartness* was "badly reasoned" other than to restate the ambiguous authorities and pronounce that they compel the opposite conclusion. *Post* at 16.

Our dissenting colleagues suggest that stare decisis is not applicable to the current decision, or in any situation where the en banc Court has the opportunity to overrule a prior panel precedent. However,

> The purpose of an en banc proceeding is not simply to determine whether a result in a particular case is correct, nor is an en banc court convened simply to second guess a three-judge panel. The reason for invoking the en banc process is to maintain the consistency of the law of the [court] and to resolve issues of exceptional importance.

U.S. v. Strickland, 601 F.3d 963, 987 (9th Cir. 2010) (Reinhardt, J., dissenting). Further, the law "is established not just by en banc decisions, but by panel decisions as well." *Gulf Power v. Federal Communications Com'n*, 226 F.3d 1220, 1224 (11th Cir. 2000); *see Harris v. Derwinski*, 1 Vet.App. 438 (1991) (en banc order) (noting that this Court's published opinions are binding precedent and must be respected under principle of stare decisis). Although the en banc Court has the power to overrule a prior panel decision, this does not mean that it is required to do so. *See U.S. v. Argon*, 851 F.2d 1158, 1175, n.6 (9th Cir. 1988) (en banc) (Reinhardt, J., concurring) ("court must make two decisions in order to reject precedent: first, to go en banc, and second, to overrule the earlier case . . . In the first type of case, the court, when deciding whether to go en banc, is required to give[] some consideration to whether the principles of stare decisis should preclude the en banc court from overruling the earlier case."). Here, the Court finds that although it has the opportunity to overrule *Hartness*, for the reasons outlined above, including the interests of consistency of the Court's case law, it declines to do so.

In this case, the Secretary had the opportunity to appeal this Court's decision in *Hartness* to the Federal Circuit and did so. While it is not clear from the Secretary's voluntary motion to dismiss why the appeal was withdrawn, it does not appear that the appeal was rendered moot, but that a unilateral decision was made to terminate the appeal, which was granted on the basis that Mr. Hartness's counsel "was consulted and . . . consented to dismiss the appeal." *Hartness v. Nicholson*, No. 2007-7024 (Fed. Cir. Nov. 14, 2007) (unpublished consent motion to dismiss appeal). To the extent that our dissenting colleagues suggest that the Secretary could properly issue a guidance letter telling regional offices to ignore the reasoning and holding of *Hartness* in cases that were not

factually identical in lieu of pursuing an appeal, *post* at 17, we strongly disagree. As the full Court held in *Ribaudo v. Nicholson*, nonacquiesence by the Secretary is not a legitimate tactic for dealing with opinions with which he may disagree. 20 Vet.App. 552, 556 (2007) (en banc).

Furthermore, the Court's decision in *Hartness* has not gone unnoticed in Congress where legislation has been introduced to abrogate that decision, but has failed to pass both chambers. *See* S. REP. NO. 148, 110th Cong., 1st Sess. 32-38 (2007) (discussing *Hartness* and legislation that passed the U.S. Senate Committee on Veterans' Affairs' to abrogate it). Therefore, the Court concludes that the interpretation of section 1513(b) reached in *Hartness* is past the point of judicial reconsideration without an exceptional showing demonstrating that the principles of stare decisis should not be applied.

As Judge Learned Hand observed many years ago: "[I]t is now well settled that the 'law of the case' does not rigidly bind a court to its former decisions, but is only addressed in good sense." *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896, 898 (3d Cir. 1924). The Court concludes that here, it is in good sense not to overrule *Hartness.* Given that the Court concludes that the Secretary's argument is unpersuasive and it would not be appropriate to revisit what has been decided in *Hartness*, we agree with the appellant's argument in this case. Section 1513(b) prevents a veteran from collecting one pension under section 1521 and a second pension under section 1513, but it does not prevent a veteran from receiving a higher pension under section 1513 simply because he would be eligible only for a basic pension under section 1521. This result prevents one class of totally disabled veterans from being treated less generously than a similarly situated class of veterans who are not totally disabled and is consistent with the rule that ambiguity in title 38 should be resolved in favor of veterans. *See Gardner v Brown*, 513 U.S. 115, 118 (1994).

Accordingly, we conclude that the Board erred in determining that the appellant is not entitled to the application of section 1513 and the ruling in *Hartness*, and that the appellant is required to show a single permanent disability that is a 100% disability under the schedule for disabilities in order to receive special monthly pension under section 1521(e). R. at 6-10. VA has already determined that the appellant has a non-service-connected disability pension because his disabilities prevented him from maintaining employment, has a disability rated at 60%, and now is

11

over the age of 65. He is, therefore, entitled to special monthly pension under section 1521(e), pursuant to the interpretation of section 1513(a) in *Hartness*.

### III. CONCLUSION

Based on the foregoing reasoning, the Court REVERSES the Board's March 7, 2008, decision that the appellant's current pension under section 1521(a) precludes him from receiving upgraded benefits in the form of a special monthly pension now that he is over 65, and the Court REMANDS the matter for further proceedings consistent with this opinion.

DAVIS, *Judge*, concurring: The critical question before the Court in this case is what did Congress intend when drafting the language contained in 38 U.S.C. §1513(a). The plain language is inexact and unclear. Contrary to the dissent's assertion, the answer, ultimately, is that Congress's intent is ambiguous and that ambiguity must be resolved in favor of the veteran. *Gardner v Brown*, 513 U.S. 115, 118 (1994).

Section 1513(a) provides:

(a) The Secretary shall pay to each veteran of a period of war who is 65 years of age or older and who meets the service requirements of section 1521 of this title [38 USCS §1521] (as prescribed in subsection (j) of that section) pension at the rates prescribed by section 1521 of this title[38 USCS §1521] and under the conditions *(other than the permanent and total disability requirement)* applicable to the pension paid under that section.

(emphasis added).

The "total and permanent disability" language only appears in two places in section 1521. It first appears in section 1521(a). There it takes the form of "...[a]nd who is permanently and totally disabled." It next appears in section 1521(e). In section 1521(e) it takes the form of "If the veteran has a disability rated as total and permanent."

Thus, the question becomes: In enacting section 1513, did Congress intend to exclude the language only contained in section 1521(a) or did it also intend to exclude similar language found in section 1521(e)? The majority of this Court, following earlier precedent in *Hartness v. Nicholson*, 20 Vet.App. 216 (2006), concluded that because the plain, and inexact, language of section 1513(a) is ambiguous, the exclusion should apply to both sections in which references to a permanent and

total disability appears. The dissent on the other hand, says that because section 1513(a) uses the specific language "*other than the permanent and total disability requirement*" rather than "*a disability rated as permanent and total*," Congress therefore intended only to exclude the permanent and total disability requirement from paragraph 1521(a), what the dissent characterizes as the threshold requirement for receiving the pension benefits. Under the dissent's interpretation of the statute, even though Mr. Chandler has reached 65 years old, he would not be entitled to a higher pension payment because he is already receiving a non-service connected pension under section 1521 based on a disability. These two opposite interpretations illustrate that the statutory language is, in fact, ambiguous.

In determining legislative intent, Courts often examine the legislative history of the statute. In 2001, Congress enacted 38 U.S.C. § 1513, awarding non-service-connected pension without regard to disability for veterans 65 years of age and older who met the service requirements of having served 90 days or more during a time of war. Veterans Education and Benefits Expansion Act of 2001, Pub.L. 107-103, U.S.C.C.A.N. (115 Stat.) 991. The legislative history of § 1513 is sparse. While Congress clearly intended § 1513 to be interpreted in conjunction with 38 U.S.C. § 1521, Congress did not specifically explain their interplay. This Court specifically noted the resulting ambiguity in footnote 2 of the *Harntess* decision. Footnote 2 provides:

> We also note that in section 1521 Congress distinguishes between a veteran "who is permanently and totally disabled," 38 U.S.C. §1521(a), and a veteran who has "a disability rated as permanent and total," 38 U.S.C. §1521(e). However, because Congress did not make that distinction in the section 1513 statutory language excluding the permanent-and-total-disability requirement, here we apply section 1513 to section 1521(a) and (e).

20 Vet.App. at 221. Thus, the *Hartness* panel struggled with the same statutory interpretive issue as we do again in Chandler, and resolved that ambiguity in a light most favorable to the veteran as required by *Gardner*.

The history of § 1521 dates back to 1958, when Congress first passed a law entitling veterans of World War I, World War II, or the Korean conflict to a monthly pension provided they had served for ninety days or more during those respective times, and were permanently and totally disabled from a non-service-connected disability not the result of their own misconduct. Pub.L. 85-857, U.S.C.C.A.N. (72 Stat.) 1136. In that same Act, Congress provided pensions for veterans of the

13

Civil War, Indian War, and Spanish-American War; however, veterans of those wars did not have to fulfill a disability requirement to qualify for a pension, only an income requirement.

In 1967, Congress decided that it would presume that all veterans age 65 or older were permanently and totally disabled and qualified to receive a non-service-connected disability pension, apparently in an effort to ensure elderly wartime veterans received economic assistance even if they were not disabled. Veterans' Pension and Readjustment Assistance Act of 1967, Pub.L. 90-77, U.S.C.C.A.N. (81 Stat.) 178. Congress repealed that presumption in 1990, leaving the current statutory structure. Omnibus Budget Reconciliation Act of 1990, Publ.L. 101-508, U.S.C.C.A.N. (104 Stat.) 1388. It is logical that Congress intended that disabled wartime veterans would receive a higher pension amount than non-disabled wartime veterans, resulting in the various categories established in § 1521 (b) through (g).

As §§ 1513 and 1521 are currently written, Congress has left much up to the Court's interpretation with little guidance. The factual circumstances of *Hartness*, and the Court's obligation to resolve ambiguity in favor of the veteran, resulted in the conclusion that § 1513(a) excluded the disability requirement contained in § 1521(a) and (e). A common sense reading of the statutory structure makes two things clear. First, pursuant to section 1513(a), Congress determined that an older veteran who has served for ninety consecutive days in a time of war is entitled to a pension payment by virtue of age and service. Second, pursuant to the provisions contained in section 1521(b) through (g), based on the veteran's individual circumstances, the veteran receives pension payments that vary depending on the veteran's marital status, whether or not the veteran is supporting children and whether or not the veteran has certain levels of disability.

While neither the position of the majority nor that of the dissent is unreasonable, this is a classic example of the plague of veterans law–that is–too often statutes and regulations are unclear and ambiguous, and lack legislative history from which intent may be derived. In such circumstances, I agree wholeheartedly with my colleagues in the majority that ambiguity must be resolved in the light most favorable to the veteran. *Gardner, supra*. Were this Court to overrule *Hartness*, as the dissent requests, we would be offering yet another interpretation of what we think Congress may have meant, and a potentially disparate treatment of veterans similarly situated as the majority points out.

14

Moreover, the kind of ambiguity that disrupts the fluid operation of this statutory provision begs for a legislative fix, which I understand, may be currently pending on Capitol Hill. Veterans' Benefit Enhancement Act of 2009, S. 728, 111th Cong. § 202. Whether or not Congress ultimately addresses the legislative ambiguity extant here, it is not the province of this Court to draft corrective legislation disguised as an opinion.

KASOLD, *Chief Judge*, with whom GREENE, *Judge*, joins, dissenting. Certainly, matters that are settled should remain settled unless there is very good reason to unsettle them. *See Citizens United v. FEC*, 130 S. Ct. 876, 911-912 (2010) ("[P]recedent is to be respected unless the most convincing of reasons demonstrates that adherence to it puts [the Court] on a course that is sure error."); *see also Arizona v. Rumsey*, 467 U.S. 203, 212 (1984) ("[A]ny departure from the doctrine of stare decisis demands special justification."). Equally certain, however, when decisions are wrong and not settled, there is little to no reason to let them stand. *See Payne v. Tenn.*, 501 U.S. 808, 827 (1991) ("[W]hen governing decisions are unworkable or are badly reasoned, 'this Court has never felt constrained to follow precedent.'" (quoting *Smith v. Allwright*, 321 U.S. 649, 665(1944))); *see also Anastasoff v. United States*, 223 F.3d 898, 905 (8th Cir. 2000), *vacated as moot on reh'g en banc*, 235 F.3d 1054 (8th Cir. 2000) ("[W]e are not here creating some rigid doctrine of eternal adherence to precedents. Cases can be overruled. Sometimes they should be. . . If the reasoning of a case is exposed as faulty, or if other exigent circumstances justify it, precedents can be changed."); *Ribaudo v. Nicholson*, 20 Vet.App. 552 554, n.20 (2007) (en banc) ("[T]his Court, now sitting as a full court panel, is not bound by this Court's prior decisions and is free to write on a clean slate.").

Succinctly stated, the Court erred in *Hartness v. Nicholson*, 20 Vet.App. 216 (2006), when it concluded that the enactment of 38 U.S.C. § 1513(a), which provides pension benefits for veterans aged 65 and over "at the rates prescribed by [38 U.S.C. § 1521] and under the conditions (*other than the permanent and total disability requirement*) applicable to pension paid under that section" (emphasis added), was intended by Congress to be anything other than a mechanism for our elderly veterans who are not permanently and totally disabled to meet the threshold requirement established in 38 U.S.C. § 1521(a) for receiving the pension benefits otherwise payable under 38 U.S.C. § 1521, with the specific amount of pension based on additional criteria provided in subsection (b)

15

(unmarried or separated), (c) (married), (d) (in need of regular aid and attendance), (e) (a disability rated as permanent and total and additional disability rated at 60% or permanently housebound), or (f) (veteran spouses both eligible for pension).

Contrary to the majority's suggestion, this is not a case where the language of the statute is ambiguous.[1] Congress's choice of words is clear and its plain language is controlling. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . . When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981))); *Bradley v. Peake*, 22 Vet.App. 280, 291 (2008) ("'Congress expresses its intent through the language it chooses' and that the choice of words in a statute is therefore deliberate and reflective." (quoting *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1347 (Fed. Cir. 2004) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 433 n. 12, 436 (1987))).

The phrase in section 1513(a), "other than the permanent and total disability requirement," refers to the threshold requirement in section 1521(a) that a veteran be "permanently and totally disabled" to be eligible for any pension benefits under section 1521, and does not refer to the additional requirement in section 1521(e) that a veteran have "a disability *rated* as permanent and total" (emphasis added) to be considered for the compensation provided by that subsection. Section 1521(a) explicitly refers to veterans who are considered to be permanently and totally disabled, while section 1521(e) explicitly refers to veterans who have a disability *rated* as permanent and total. That the phrase "permanently and totally disabled" is different from "a disability *rated* as permanent and total" should not be questioned, as the law provides that a veteran can be permanently and totally disabled without having a disability *rated* as permanent and total; *e.g.*, under 38 U.S.C. § 1502(a)(1),

---

[1] With regard to the suggestion of our colleague concurring with the majority that a statute must be ambiguous if two interpretations are proffered, this is only so when the two interpretations are equally reasonable or fair interpretations of the plain language used by Congress. Saying it is so does not make it so. *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 130 S.Ct. 1758, 1769, n.7 (2010) ("[M]erely saying something is so does not make it so"). This is why panel decisions should be reviewed de novo. *Ribaudo*, *supra*.

a patient in a nursing home for long-term care because of disability is considered "permanently and totally disabled."

The majority's discussion of the quality of the reasoning provided in the *Hartness* decision ignores the fact that the *Hartness* decision addressed the significant difference in the language of section 1521(e) (requiring a disability *rated* as permanent and total), and the language of section 1513(a) and 1521(a) (addressing the permanent and total disability requirement or status), in a footnote, 20 Vet.App. at 221, n.2. , without the reasoned analysis that might withstand the scrutiny of a review by the en banc Court, *see Citizens United*, 130 S.Ct. at 911-12 (noting that a relevant factor in stare decisis is "whether the decision was well reasoned" (quoting *Montejo v. Louisiana*, 129 S.Ct. 2079, 2088-2089 (2009)). *See also National Cable & Telecommunications Ass'n, Inc. v. Gulf Power Co, et al,* 534 U.S. 327, 335 (2002) (rejecting conclusion, presented in a footnote without analysis, that had no foundation in the plain language of the statute); *United States v. Sotelo*, 436 U.S. 268, 283 (1978) (Rehnquist, J., dissenting) ("Perhaps recognizing that this provision not only does not support its conclusion but seriously undermines it, the Court not surprisingly attempts to keep this provision in the background, addressing it only obliquely in a footnote . . ."); *Edelman v. Jordan*, 415 U.S. 651 (1974) (declining to give stare decisis effect to judgments that had been issued without opinion -- "summary affirmances" that did not "contain any substantive discussion" of the point at issue or any other point, *id*., at 670-671); *Ribaudo*, *supra*.

Similarly, the majority's suggestion that *Hartness* remains a workable decision is undercut by the very fact that in an effort to work around *Hartness*, the Secretary promulgated the VA Fast letter that is at the heart of this appeal, and that the majority has now stricken down.[2]  The *Hartness*

---

[2]  The Secretary's Fast Letter is referenced because it demonstrates that the particular issues discussed in *Hartness* are not workable and not accepted by the parties (at least one of them) over time.  The majority's suggestion that this reference somehow indicates support for the proposition that the Secretary might avoid application of our precedential case law is perplexing because any such indication is not fairly raised by the reference.  Moreover, the Secretary's Fast Letter is an obvious attempt to comply with the holding in *Hartness* for claims involving facts identical to those in *Hartness*, but not for claims with some differentiating fact.  *Cf. Cohens v. Virginia*, 19 U.S. 264 (1821) (noting that language in a particular case is meant be viewed in the context of the case and should not be extended blindly in subsequent cases).  As the majority notes, the Fast Letter has unreasonable distinctions and results.  If *Hartness* were correctly decided, the Fast Letter should be stricken.  But the key issue to be taken from the Fast Letter is that *Hartness* is not workable or well-settled by time which, in the context of being wrongly decided, weighs against the application of stare decisis.  *Citizens United*, *supra* (noting relevant factors for applying "stare decisis include [workability], the antiquity of the precedent, the reliance interests at stake, and whether the decision was well reasoned").  *See also Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1374 (Fed. Cir. 2001) (noting that parties

17

decision is unworkable because in equating the phrase in section 1521(e) with the phrases in section 1513(a) and 1521(a), *Hartness* gives no meaning to the plain language of the statute, with the end result being an unauthorized grant of additional pension benefits, at the expense of the taxpayer, to veterans not otherwise entitled to receive those benefits. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 432-33 (1992) (no equitable considerations can create a right to payments out of the U. S. Treasury that have not been provided for by Congress); *Rhodan v. West*, 12 Vet.App. 55, 57, 58 (1998) (Holdaway, J., concurring) ("[I]t must be remembered that the Secretary is not merely representing the departmental interests, he is, in a larger sense, representing the taxpayers of this country and defending the public fisc from the payment of unjustified claims. . . . There is a duty to ensure that, insofar as possible, only claims established within the law are paid. The public fisc and the taxpayer must be protected from unjustified claims.").

The majority err today in concluding that the doctrine of stare decisis warrants retention of *Hartness*. None of the reasons for applying that doctrine apply here. The *Hartness* decision is wrongly decided, and the passage of time since *Hartness* was decided – four years – is hardly enough time to give it the weight of "antiquity." *Citizens United*, *supra* (noting antiquity of a decision as a factor in applying stare decisis). And, the majority's focus on the fact that Congress has not yet passed an amendment to rectify the error ignores the reality of passing legislation, and gives too little weight to the express concerns by the Senate that have not been expressly rebutted by the House; there simply is no basis to suggest that attempts to amend the statute have been rejected by Congress, as opposed to sidelined because of other major issues addressed in the past several years.

The doctrine of stare decisis is important to our jurisprudence, but when the en banc Court for the first time is reviewing a particular issue and also reviewing a panel decision that (1) is wrong, (2) has been in effect for only four years, (3) has caused a party (here, the Secretary) to attempt to work around it, (4) purports to authorize benefits not otherwise authorized by Congress, and (5) has resulted in Congress undertaking to pass legislation to overrule the decision by statute, stare decisis should not apply; or, at least the considerations of stare decisis should not outweigh overturning the erroneous panel decision by the en banc Court. *Citizens United* and *Ribaudo*, both *supra*. "In such

are not bound by decisions of a Court in subsequent cases if they plan to seek review of an issue in a higher court).

18

circumstances, where a wrong turn has been taken, back is the shortest way forward." *United States v. Anderson*, 885 F.2d 1248, 1255 (5th Cir. 1989) (en banc).