Citation Nr: 1554504 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 07-06 543 ) DATE
 )
 )
On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUES

1. Entitlement to service connection for sleep apnea. 

2. Entitlement to an initial disability rating in excess of 10 percent for a left knee disability. 

3. Entitlement to an initial disability rating in excess of 10 percent for a low back disability prior to October 24, 2014 and to a disability rating in excess of 20 percent thereafter. 

4. Entitlement to a total rating based upon individual unemployability (TDIU) due to service-connected disabilities. 


ATTORNEY FOR THE BOARD

D. Martz Ames, Counsel


INTRODUCTION

The Veteran had active service from February 1983 to June 2005.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville Kentucky. The August 2005 rating decision granted service connection for a left knee disability and a low back disability and assigned initial noncompensable disability ratings. In a December 2007 rating decision, the Pittsburgh RO increased the disability rating for the left knee to 10 percent, effective March 27, 2006. In a July 2009 rating decision, the Pittsburgh RO increased the disability ratings for the left knee and low back disabilities to 10 percent, effective July 1, 2005, the date after the Veteran was discharged from service. In a July 2015 rating decision, the Pittsburgh RO increased the rating for the low back disability to 20 percent, effective October 24, 2014. Jurisdiction over the Veteran's claims file was subsequently transferred to the VA RO in Baltimore, Maryland. 

When, as here, a veteran seeks an increased evaluation, it will generally be presumed that the maximum benefit allowed by law and regulation is sought, and it follows that such a claim remains in controversy where less than the maximum benefit available is awarded. See AB v. Brown, 6 Vet. App. 35 (1993). 

In May 2010, the Board remanded this case to the RO via the Appeals Management Center (AMC) for further development and it has now been returned to the Board. The issue of entitlement to service connection for urethritis was initially on appeal and included in the May 2010 remand. In an October 2015 rating decision, the RO granted service connection for urethritis. The Veteran has not filed a Notice of Disagreement (NOD) with regard to any appealable determination made in the October 2015 rating decision with regard to urethritis. Therefore, this matter is not currently before the Board. See 38 C.F.R. §§ 20.200, 20.201, 20.302 (2015); Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997).

The Veteran submitted private medical evidence after the July 2015 Supplemental Statement of the Case (SSOC) was issued and did not provide a waiver of initial Agency of Original Jurisdiction (AOJ) consideration. The records consisted of an August 2015 record of bilateral Orthosovic injections for his knees, and a prescription for a hinged knee brace in July 2014. The July 2015 VA examination noted that the Veteran received injections every six months and used a hinged brace daily. The medical evidence of record is duplicative of information that was already in the claims file. The Veteran also submitted lay evidence describing the types of weight machines he used, including a photograph. This is duplicative of evidence already of record, which described the Veteran's workout routines. Accordingly, the Board finds no prejudice in proceeding with the present decision. See McBurney v. Shinseki, 23 Vet. App. 136, 138 (2009). 

Although the AOJ did not certify the issue of TDIU as part of this appeal, the Veteran asserted that he stopped working due to knee and back pain. Therefore, the Board has jurisdiction to consider the issue of entitlement to a TDIU as part of the claims for increased ratings for his left knee and back disabilities. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009).

The issues of entitlement to service connection for sleep apnea and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. The Veteran's left knee disability manifests as, at worst, a flexion of 80 degrees with pain, weakness, stiffness, decreased endurance, and fatigability. 

2. Prior to April 11, 2011, the Veteran's low back disability did not manifest as a forward flexion of less than 60 degrees, or a combined range of motion of the thoracolumbar spine not greater than 120 degrees, or as muscle spasm and guarding severe enough to result in abnormal gait or spinal contour, even when considering functional loss

3. Beginning April 11, 2011, the Veteran's low back disability manifested as, at worst, a forward flexion of 24 degrees with pain. 

4. The Veteran's erectile dysfunction is a neurological abnormality resulting from his service-connected low back disability. 


CONCLUSIONS OF LAW

1. The criteria for an initial disability rating in excess of 10 percent for a left knee disability have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5260 (2015).

2. Prior to April 11, 2011, the criteria for an initial disability rating in excess of 10 percent for a low back disability were not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

3. Beginning April 11, 2011, the criteria for a 40 percent disability rating, but no higher, for a low back disability have been approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

4. A separate noncompensable disability rating for erectile dysfunction as a neurological abnormality of a service-connected low back disability is granted. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.20, 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (1), 4.115b, Diagnostic Code 7522 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions set forth in the Veterans Claims Assistance Act of 2000 (VCAA). 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2015). 

This appeal arises from disagreement with initial evaluations following grants of service connection. Once service connection is granted, the claim is substantiated and additional VCAA notice is not required; any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). However, a letter dated in February 2010 satisfied the duty to notify provisions with regard to increased rating claims. The Veteran's claims were then readjudicated in the July 2015 SSOC. See Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 

With regard to the duty to assist, the Veteran's service treatment records and indicated private medical records have been obtained. In August 2015, the Veteran submitted an August 2015 referral to a surgeon. However, there is no evidence that the Veteran attended an appointment with a surgeon or that surgery took place. In his August 2015 statement, the Veteran asserted that he was attempting to avoid surgery. Therefore, there is no evidence that there are records from a surgeon in existence that VA needs to obtain. 

The Veteran was afforded VA examinations in March 2005, April 2011, and July 2015 to evaluate the severity of his left knee and low back disabilities. The VA examinations are adequate because they were based upon consideration of the Veteran's pertinent medical history, his lay assertions and complaints, and because they describe his left knee and low back disabilities in detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Shinseki v. Sanders, 556 U. S. 396, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination). Further, the purpose behind the notice requirement has been satisfied because the Veteran has been afforded a meaningful opportunity to participate effectively in the processing of his claims, to include the opportunity to present pertinent evidence. 

The Board remanded this case in May 2010 so that additional records could be obtained. The RO requested and obtained additional records. The remand instructed the RO to convert a compact disc of the Veteran's MRI and x-rays into a format that could be associated with the Veteran's claims file. The images have been uploaded into the Veteran's electronic claims file. There was substantial compliance with respect to these remand directives. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

The May 2010 remand also directed the RO to schedule the Veteran for VA examinations. The RO was to specifically instruct the examiner to use the Disability Exam Worksheet that was revised on April 20, 2009 for the Veteran's low back disability and the one that was revised on December 9, 2009 for the left knee disability. VA examinations were provided in July 2015. They did not use the Disability Exam Worksheets that were revised in 2009. Instead, the more recent Disability Benefits Questionnaires were used. These worksheets are designed to fully address the rating criteria for the Veteran's disabilities. The Board recognizes this deviation from the remand directives, but finds that it is not such that a remand is required for correction. See D'Aries v. Peake, 22 Vet. App. 97, 106 (2008).

II. Increased Rating Claims

Disability ratings are determined by applying the criteria established in VA's Schedule for Rating Disabilities, which is based upon the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.20 (2015). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher evaluation is assigned if the disability more nearly approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). Consideration must be given to increased evaluations under other potentially applicable Diagnostic Codes. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). Furthermore, when it is not possible to separate the effects of the service-connected disability from a non service-connected condition, such signs and symptoms must be attributed to the service-connected disability. 38 C.F.R. § 3.102 (2015); Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam). 

The standard of proof to be applied in decisions on claims for veterans' benefits is set forth in 38 U.S.C.A. § 5107 (West 2014). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102 (2015). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the claimant. 38 C.F.R. § 4.3 (2015).

Staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007) (citing Fenderson v. West, 12 Vet. App. 119, 126 (1999)). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The Veteran's entire history is to be considered when making a disability determination. 38 C.F.R. § 4.1 (2015); Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Given the nature of the present claims for higher initial evaluations, the Board has considered all evidence of severity since the effective date for the award of service connection. 

A. Left Knee Disability

The Veteran's left knee disability is currently evaluated as 10 percent disabling under hyphenated Diagnostic Code 5003-5260. 38 C.F.R. § 4.71a (2015). A hyphenated Diagnostic Code is used when a rating under one code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned. See 38 C.F.R. § 4.27 (2015). Here, Diagnostic Code 5003 is applicable to arthritis and Diagnostic Code 5260, pertinent to limitation of flexion of the knee, is the joint-specific code.

Under Diagnostic Code 5003, if the limitation of motion is noncompensable, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a (2015). 

In the absence of compensable limitation, as here, a 10 percent evaluation is warranted when there is x-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups. 38 C.F.R. § 4.71a. A July 2014 x-ray shows that the Veteran has mild patellofemoral arthritis of the left knee. A 20 percent rating is warranted under DC 5003 where there is x-ray evidence of the involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations. 38 C.F.R. § 4.71a. For the purposes of rating disabilities from arthritis, the following are considered major joints: shoulder, elbow, wrist, hip, knee, and ankle. 38 C.F.R. § 4.45(f) (2015). 

In this case, the Veteran has painful, limited motion such that the schedular criteria for a compensable rating for limitation of motion of the knee are not met. With or without degenerative arthritis, it is the intention of the rating schedule to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2015); see also Burton v. Shinseki, 25 Vet. App. 1, 5 (2011). The Veteran has been assigned the minimum compensable rating for the knee based upon painful motion. A veteran is not entitled to separate compensable disability awards for both arthritis (under Diagnostic Code 5003) and limitation of motion (under another Diagnostic Code) in the same joint. Hicks v. Brown, 8 Vet. App. 417 (1995); Lichtenfels v. Derwinski, 1 Vet. App. 484, 488 (1991). To separately rate for the same symptoms would constitute impermissible pyramiding. 38 C.F.R. § 4.14 (2015). 

The Veteran is receiving three separate compensable disability ratings for service-connected arthritis of the left shoulder, the right shoulder, and the cervical spine. To include the presence of arthritis in these joints as part of the Veteran's disability rating for his left knee is not permissible because the ratings for his shoulders and cervical spine are based upon limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003, Note (1) (2015). Additionally, the three separate ratings (one for each shoulder and one for the cervical spine) assigned are more favorable to the Veteran because they combine to a number in excess of 20 percent. 38 C.F.R. § 4.25 (2015). Therefore, a 20 percent disability rating under Diagnostic Code 5003 for his left knee disability is not warranted. 

There are two Diagnostic Codes for limitation of motion of the knee, they provide criteria for limitation of flexion and extension of the leg. When an evaluation of a disability is based upon limitation of motion, the Board must also consider, in conjunction with the otherwise applicable Diagnostic Code, any additional functional loss the Veteran may have sustained by virtue of other factors as described in 38 C.F.R. §§ 4.40 and 4.45. DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). Such factors include more or less movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, swelling, and deformity or atrophy from disuse. A finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the Veteran. 38 C.F.R. § 4.40 (2015); Johnston v. Brown, 10 Vet. App. 80, 85 (1997). 

Under Diagnostic Code 5260, limitation of flexion of the leg, a noncompensable evaluation is warranted when flexion is limited to 60 degrees. A 10 percent evaluation is warranted when flexion of the leg is limited to 45 degrees. A 20 percent evaluation is warranted when flexion is limited to 30 degrees. 38 C.F.R. § 4.71a (2015). Normal flexion is 140 degrees. 38 C.F.R. § 4.71, Plate II (2015). 

Under Diagnostic Code 5261, limitation of extension of the leg, a noncompensable evaluation is warranted when extension is limited to 5 degrees. A 10 percent evaluation is warranted when extension of the leg is limited to 10 degrees. 38 C.F.R. § 4.71a (2015). Normal extension is 0 degrees. 38 C.F.R. § 4.71, Plate II (2015). 

At his March 2005 VA examination, the Veteran's left knee flexion was 125 degrees with pain. His extension was normal at 0 degrees. After repetitive testing, his ranges of motion had not changed. His knee was stable. There was no erythema, warmth, or edema. He had full weightbearing with a strength of 5/5. He was able to walk on his toes, heels, and perform a tandem walk. The examiner stated that there was increased pain with weightbearing. However, the examiner also stated that the Veteran was still able to run three miles, perform unlimited walking, and undertake all other activities of daily living. 

In his November 2005 NOD, he stated that his March 2005 examination did not reflect the true severity of his knee disability because of his medication. He also stated that he was unable to run. In December 2007, he again argued that the March 2005 examination was not accurate. The Board finds the Veteran's statements competent and credible, and therefore will not consider the March 2005 examiner's findings in evaluating his left knee disability. 

In January 2007, Dr. J. B., a private physician, noted that the Veteran had patellar chondropathy of the left knee with gonarthrosis (arthropathy of the knee joint, see Dorland's Illustrated Medical Dictionary, 797 (32nd ed. 2012)) without functional restriction with insufficient load capacity. He had patellar pain on pressure. His flexion was 127 degrees and his extension was normal at 0 degrees. Dr. J. B. stated that the Veteran's ligaments were stable. 

In April 2007, Dr. J. B. noted that the Veteran did not use assistive devices and that his gait was normal. He was only able to crouch 3/5 of the way and then had to stop due to pain. His flexion was 127 degrees and his extension was normal at 0 degrees. 

In an August 2008 record from the International Clinic, his left knee flexion was 80 degrees with crepitus and pain. His joint was stable. 

In June 2009, he underwent a knee MRI which showed "mild joint effusion" with a diffusely thickened synovium. His ACL, PCL, MCL, LCL, quadriceps, and patellar tendons were normal. There were no loose bodies. The impression was mild synovitis and infrapatellar bursitis of the knees. 

At his April 2011 VA knee examination, the Veteran stated that his pain level was a 6 out of 10 and that it increased with activity. He reported weakness, stiffness, swelling, and fatigability on stairs. He reported that he was limited to walking two miles at a slow pace, standing for 30 minutes, and climbing eight flights of stairs with pain. He was able to knee and squat with intense pain, which demonstrated a lack of endurance. He stated that he had daily flare-ups during which his pain increased to a 9 out of 10. The Veteran reported that his pain slowed him down to the point where he felt that he was unable to continue his job as a technical inspector in Kuwait. He wore a knee brace every day. He denied heat, instability, giving way, and locking. The examiner found that there was no dislocation or subluxation. 

Upon examination, his flexion was 84 degrees with pain beginning at 78 degrees. His extension was normal at 0 degrees without pain. After three repetitions, his flexion was 80 degrees with pain. The examiner noted "[o]nly mild loss of movement against strong resistance." His strength examination was normal but he was unable to complete a squat due to pain, which led the examiner to find that he had a "mild" loss of strength. He had no instability, redness, heat, or edema. His entire kneecap was tender to palpation, as well as his medial and lateral joint spaces. The examiner found that his gait was symmetrical but that he used a railing on steps and walked slower. The examiner concluded that the Veteran had "moderate" limitation of motion and function, with constant resting pain that increased with weightbearing. He also found that the Veteran had morning stiffness, weakness due to pain, and abnormal fatigability. 

At his July 2015 VA examination, the examiner diagnosed arthritis and chondromalacia. The Veteran reported flare-ups when standing and walking and the examiner described his functional impairment as problems standing and walking. Upon examination, the Veteran's flexion was 100 degrees with pain and his extension was normal at 0 degrees with pain. He also had painful weight bearing. He had mild tenderness to palpation over the patellar facet and medical joint lines. He was able to complete repetitive motion, after which his flexion decreased to 90 degrees, but his extension remained normal at 0 degrees. The examiner noted that the Veteran was not being examined immediately after repetitive use over time because, "[t]he examination is medically consistent with the Veteran's statements describing functional loss with repetitive use over time." The examiner also noted that the examination was not conducted during a flare-up, but that "[t]he examination is medically consistent with the Veteran's statements describing functional loss during flare-ups." The Veteran's strength was 4/5, indicating some weakness. He did not have atrophy or ankylosis. 

The examiner found that the Veteran did not have recurrent subluxation, dislocation, lateral instability, "shin splints," stress fractures, chronic exertional compartment syndrome, or any other tibia or fibula impairment. All joint stability tests were normal. The examiner noted that there was "recurrent effusion" with prolonged walking. The examiner stated that there were no other pertinent findings, complications, conditions, signs, or symptoms related to the left knee. 

The examiner noted that the Veteran used a hinged brace daily and that his functioning was not so diminished that amputation and use of a prosthesis would be better. The examiner described the severity of the Veteran's left knee disability as "moderately severe." The Veteran reported that he stopped working on February 2013 because his physical job required climbing and jumping, which made his knee pain increase.

In August 2015, the Veteran asserted that the March 2005 VA examiner's statements regarding his ability to weight lift and go to the gym were taken out of context. He stated that his weight lifting program was designed by the Wiesbaden Army Health Clinic and was designed as an assisted machine workout plan as part of conservative physical therapy, and that he did not use free or heavy weights. The Board finds the Veteran's assertion competent and credible and, as noted above, the March 2005 VA examination report will not be considered in the adjudication of this claim. 

The Veteran's flexion is at worst 80 degrees, even when considering pain and the factors set forth in 38 C.F.R. §§ 4.40 and 4.45. This does not meet the criteria for even a noncompensable evaluation under Diagnostic Code 5260, which requires that flexion be limited to 60 degrees. The Veteran's limitation of flexion to 80 degrees at worst is not more closely described by the 20 percent criteria, which require that flexion be limited to 30 degrees. Therefore, a 20 percent rating under Diagnostic Code 5260 is not warranted. 38 C.F.R. § 4.71a (2015). 

Separate ratings are available for limitation of flexion and limitation of extension under Diagnostic Codes 5260 and 5261. VAOPGCPREC 9-2004 (2004). In this case, the Veteran's extension has been consistently normal at 0 degrees. Although he sometimes reported pain on extension, it was not such that it caused any limitation of extension. Even when considering pain, his extension is not more accurately described as being limited to 5 degrees, which is required for a noncompensable disability rating under Diagnostic Code 5261. 

It is clear from the Veteran's competent, credible description of his symptoms that there is limited motion and painful motion. The provisions of 38 C.F.R. § 4.59 establish that the Veteran is entitled to at least the minimum compensable evaluation for motion that is accompanied by pain. See Burton v. Shinseki, 25 Vet. App. 1 (2011). However, evaluations in excess of the minimum compensable rating must be based on demonstrated functional impairment. Although pain may cause a functional loss, pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). Pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Id. at 38; see 38 C.F.R. § 4.40 (2015).

As noted above, the Board's functional loss in the form of painful motion, weakness, stiffness, decreased endurance, and fatigability has been considered in the evaluation of his left knee disability. The Board has also considered his reports of problems with prolonged standing or walking and his fatigability on stairs. However, even when considering these factors, the criteria for a 20 percent rating for limitation of flexion or a separate rating for limitation of extension are not more closely approximated. Even when considering functional limitations due to pain and other factors identified in 38 C.F.R. §§ 4.40, 4.45, the Board finds that the Veteran's functional loss from his left knee disability does not equate to more than the disability picture contemplated by the 10 percent rating already assigned. 38 C.F.R. § 4.71a (2015). 

The Board must consider other potentially applicable Diagnostic Codes. Diagnostic Code 5257 contemplates other impairments of the knee. Under Diagnostic Code 5257, a 10 percent evaluation is warranted when there is slight recurrent subluxation or lateral instability. A 20 percent evaluation is warranted when there is moderate recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a (2015). Diagnostic Code 5257 is based upon instability and subluxation, not limitation of motion, as a result, the criteria set forth in DeLuca do not apply. DeLuca, 8 Vet. App. 202. A veteran who has arthritis as shown by x-ray and instability of the knee may be rated separately under Diagnostic Codes 5003 and 5257. VAOPGCPREC 23-97; 62 Fed. Reg. 63,604 (1997). The evidence of record shows that the Veteran's left knee is stable. Additionally, the record shows that he does not have recurrent subluxation. Therefore, a separate rating under Diagnostic Code 5257 is not warranted. 

The Veteran does not have a meniscal condition. The Veteran's June 2009 MRI noted normal signal intensity of the meniscus with no image of a tear. The April 2011 VA examiner stated that an MRI conducted in April 2011 showed an intact lateral meniscus. Along the basis of the posterior horn of the medial meniscus and in a breadth of 2.5 centimeters there was "...a multiple times chambered parameniscal cyst with an extension to the posterior insertion of the intact PCL," but no meniscal tear. The July 2015 VA examiner found that the Veteran did not have meniscal conditions. Therefore, Diagnostic Codes 5258 and 5259 are not applicable. 

As for other potentially applicable Diagnostic Codes, the Veteran does not have ankylosis, there is no malunion of the tibia or fibula, and he does not have genu recurvatum. Therefore Diagnostic Codes 5256, 5262, and 5263 do not apply. 38 C.F.R. § 4.71a (2015). 

For these reasons, an initial disability rating in excess of 10 percent for a left knee disability is denied because the overall disability picture for the left knee does not more closely approximate the criteria for a higher rating under the applicable Diagnostic Codes. 38 C.F.R. § 4.7 (2015). Therefore, the preponderance of the evidence is against this claim. 38 C.F.R. § 4.3 (2015). 

B. Low Back Disability

The Veteran's low back disability was assigned an initial 10 percent disability rating. As a preliminary matter, the Board notes that in a July 17, 2015 rating decision that was issued to the Veteran on July 20, 2015, the RO increased his disability rating to 20 percent effective October 24, 2014. However, in a July 23, 2015 SSOC, the RO then denied a disability rating in excess of 10 percent. The Board will consider the staged rating as opposed to considering only whether the Veteran is entitled to a disability rating in excess of 10 percent because this is more favorable to him, and he should not be penalized for the RO's error. 

Additionally, the Board notes that in July 2015, the RO selected October 24, 2014 as the effective date for the 20 percent rating because that was the date of his "claim" for an increased rating. However, the issue of entitlement to an increased rating for a back disability had already been properly appealed to the Board and had been in remand status since May 2010. 

The Veteran's low back disability is evaluated under Diagnostic Code 5237, lumbosacral or cervical strain, which is evaluated using the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula). Under this formula, a 10 percent evaluation is warranted when forward flexion of the thoracolumbar spine is greater than 60 degrees but not greater than 85 degrees; or, or, the combined range of motion of the thoracolumbar spine is greater than 120 degrees but not greater than 235 degrees; or, there is muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, there is vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a (2015). 

A 20 percent evaluation is warranted when the forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or, there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. The criteria for a 30 percent evaluation pertain only to the cervical spine and are therefore not applicable in this case. 

A 40 percent evaluation is warranted when forward flexion of the thoracolumbar spine is 30 degrees or less; or, there is favorable ankylosis of the entire thoracolumbar spine. Id. 

A 50 percent evaluation is warranted when there is unfavorable ankylosis of the entire thoracolumbar spine. Id. 

The criteria under the General Rating Formula are to be applied with or without symptoms of pain (whether or not it radiates), aching, or stiffness in the area of the spine involved. Id. Because the rating criteria are based upon limitation of motion, additional functional loss must be considered. DeLuca, 8 Vet. App. at 206. 

The Board notes that there is a question as to whether the Veteran has intervertebral disc syndrome (IVDS). The April 2011 VA examiner diagnosed degenerative disc disease, while the July 2015 VA examiner stated that the Veteran did not have IVDS. Even if the Veteran has IVDS, the rating criteria for rating it are not more favorable to him. IVDS is evaluated either on the total duration of incapacitating episodes over the past 12 months or by combining under 38 C.F.R. § 4.25 (the combined rating table) separate evaluations of its chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever method results in the higher evaluation. 

IVDS warrants a 10 percent evaluation when the veteran has incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months. A 20 percent evaluation is warranted when the veteran has incapacitating episodes having a total duration of a least 2 weeks but less than 4 weeks during the past 12 months. 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (2015). 

For purposes of assigning evaluations under Code 5243, an "incapacitating episode" is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Id. at Note (1). There is no medical or lay evidence of record indicating the Veteran has ever had an incapacitating episode due to his low back disability under the regulatory definition. Therefore, the Formula for Rating Intervertebral Disc Syndrome does not apply. 

Period Prior to April 11, 2011

The Veteran underwent a VA examination in March 2005. As discussed above, based upon the Veteran's competent, credible assertions in his November 2005 NOD and December 2007 statement regarding the accuracy of the examination, it will not be used in the evaluation of his low back disability.

An August 2008 record from the International Clinic noted flexion of 60 degrees with pain, extension was 30 degrees with pain, and that lateral flexion was 20 degrees bilaterally. The August 2008 record does not provide measurements for lateral rotation. Therefore, this record may not be used to calculate the combined range of motion of the Veteran's thoracolumbar spine. However, the report does not support a 20 percent disability rating because it does not show that the Veteran's forward flexion was less than 60 degrees. Although it was noted that he experienced pain at 60 degrees of flexion, the record does not indicate that such pain caused his flexion to decrease to less than 60 degrees. Additionally, the record does not provide information regarding muscle spasm or guarding. 

In December 2009, the Veteran stated that he had increased pain, weakness, and deterioration. He stated that his disabilities impacted his ability to work and that he increased his medication. His statements regarding his observable symptoms are both competent and credible. 

The evidence of record prior to April 11, 2011, does not support a 20 percent rating. Even when considering functional limitations due to pain and other factors identified in 38 C.F.R. §§ 4.40, 4.45, the Board finds that the Veteran's functional loss from his left back disability is not more accurately described by the 20 percent criteria. 38 C.F.R. § 4.71a (2015). 

Period Beginning April 11, 2011

The Veteran underwent a VA examination on April 11, 2011. He reported that his pain was a 7 out of 10. He stated that he had weakness and stiffness every morning, and flare-ups every week that increased his pain level to 9 or 10 out of 10. He stated that during flare-ups he could only perform desk work. He was able to walk unaided and reported walking slowly on a treadmill for two miles, but with pain. He reported that since 2010, he used a lumbar belt when he needed to lift something. He stated that he did not fall as a result of his back disability. The examiner noted that the Veteran's mobility, transfers, and bed activity were "painfully limited." He had no impairment in grooming, toileting, and dressing. He stated that daily pain slowed him down at work. 

Upon examination, he had normal thoracic kyphosis and lumbar lordosis. His gait was symmetrical, but slowed. His forward flexion was 32 degrees with pain. After repetitive motion, it was 24 degrees with pain. Interpreting the evidence in the most favorable light, the Board finds that the Veteran's forward flexion was limited to 24 degrees, which meets the criteria for a 40 percent rating under the General Rating Formula. 38 C.F.R. §§ 4.7, 4.71a (2015). A 40 percent rating is granted effective April 11, 2011, the date of the VA examination showing that his forward flexion was less than 30 degrees. 

However, a 50 percent rating is not warranted because none of the medical or lay evidence shows that the Veteran has any form of ankylosis in his thoracolumbar spine, even when considering pain and functional loss due to factors set forth in 38 C.F.R. §§ 4.40 and 4.45. Since April 11, 2011, the Veteran has retained mobility in his thoracolumbar spine, therefore he does not manifest ankylosis of any form. See Dinsay v. Brown, 9 Vet. App. 79, 81 (1996); Lewis v. Derwinski, 3 Vet. App. 259 (1992) (indicating that ankylosis is complete immobility of the joint in a fixed position, either favorable or unfavorable). 

The Veteran underwent a VA examination in July 2015. He reported increased pain with prolonged standing, walking, bending, and lifting. Upon examination, his flexion was 50 degrees, his extension was 10 degrees, and his lateral flexion and rotation were 25 degrees bilaterally. He had pain during range of motion testing. After repetitive motion, his flexion was 40 degrees, his extension was 5 degrees, and his lateral flexion and rotation were 20 degrees bilaterally. The examiner noted that the results of the examination were consistent with the Veteran's statements describing functional loss over time and during a flare-up. He regularly used a back brace. The examiner noted that the Veteran's functional loss was due to pain. His strength and reflexes were normal. The examiner described the overall severity of the Veteran's disability as "moderate." 

The results of the July 2015 VA examination clearly show that the Veteran does not have ankylosis, as he was able to move his thoracolumbar spine. His pain and functional loss do not cause his disability to be more accurately described as unfavorable ankylosis of the thoracolumbar spine. 

"Unfavorable ankylosis" is defined as "a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching." 38 C.F.R. § 4.71a, General Rating Formula, Note (5) (2015). Additionally, fixation of a spinal segment in neutral position (zero degrees) is "always" considered favorable ankylosis. Id.

The remaining medical and lay evidence of record since April 11, 2011 does not show that the Veteran's back disability is more closely described as unfavorable ankylosis. The Veteran has not asserted that his low back disability is of such severity that it is more closely described as an inability to move his spine. Additionally, the medical and lay evidence of record does not show that any of the factors required in VA's definition of unfavorable ankylosis are present. Id. 

Even when considering pain and functional loss, the Board finds that the overall disability picture for the Veteran's low back disability for the period beginning April 11, 2011 does not more closely approximate a 50 percent rating. 38 C.F.R. § 4.7 (2015). In conclusion, a 40 percent disability rating, but no higher, is assigned for the Veteran's low back disability, effective April 11, 2011. 

C. Neurological Manifestations

The General Rating Formula provides that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment are to be evaluated separately under an appropriate Diagnostic Code. 38 C.F.R. § 4.71a, General Rating Formula, Note (1) (2015). 

The Veteran has been diagnosed with erectile dysfunction. At his April 2011 VA examination, the examiner listed it as a symptom associated with his back disability and stated that his prescribed medication was effective. This provides evidence in favor of a separate evaluation for erectile dysfunction as a neurological manifestation of his low back disability. 

The July 2015 VA examiner found that the Veteran did not have any neurological manifestations of his low back disability, which provides evidence against a separate evaluation for erectile dysfunction. 

Interpreting the evidence in the most favorable light, the Board finds that a separate rating for erectile dysfunction is warranted based upon the finding of the April 2011 VA examiner. Id. Erectile dysfunction is rated by analogy, to "penis, deformity, with loss of erectile power" under Diagnostic Code 7522. 38 C.F.R. §§ 4.20, 4.115b, Diagnostic Code 7522 (2015). That code provides for a single 20 percent rating for deformity of the penis with loss of erectile power.

In this case, while there is a confirmed diagnosis of erectile dysfunction, there is nothing in the clinical evidence of record that points to a deformity of the penis, and the Veteran does not contend otherwise. The Veteran's erectile dysfunction does not meet the criteria for a 20 percent evaluation, which is the only compensable rating available under Diagnostic Code 7522. Therefore, the Board finds that the Veteran's erectile dysfunction is more closely approximated by a noncompensable disability rating. 

The evidence of record does not show that there are any other neurologic abnormalities associated with the Veteran's low back disability. The April 2011 VA examiner found that there were no bowel or bladder complaints. The Veteran's sensory and motor examinations were normal. His reflexes were normal. Radiculopathy was not diagnosed. The July 2015 VA examiner found that there were no neurological manifestations of the low back disability. The Veteran's strength, reflexes, and sensory examinations were normal. His straight leg test was negative bilaterally, indicating the absence of radicular symptoms. The remaining medical and lay evidence of record does not support a finding that there are additional neurological manifestations of the Veteran's low back disability that warrant separate ratings. 

III. Extraschedular Consideration

There is no evidence of exceptional or unusual circumstances to warrant remand to refer these claims for extraschedular consideration. 38 C.F.R. § 3.321(b)(1) (2015). The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability at issue are inadequate. Therefore, there must be a comparison between the level of severity and the symptomatology of the Veteran's disability with the established criteria provided in the rating schedule for the disability. If the criteria reasonably describe the Veteran's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is adequate, and no referral to the Director of the Compensation Service for consideration of an extraschedular rating is required. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

If the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the Veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (2015). Related factors include "marked interference with employment" and "frequent periods of hospitalization." Id. 

The Veteran's left knee disability manifests as painful limitation, tenderness, weakness, lack of endurance, fatigability, stiffness, and swelling. These symptoms as well as his functional loss (such as difficulty walking, standing, and weight bearing) from them are contemplated by the schedular criteria set forth in Diagnostic Code 5260 and the factors set forth in 38 C.F.R. §§ 4.40, 4.45, and 4.59. The Veteran uses a knee brace. This is not a symptom of his disability, it is a means by which his symptoms as noted above are relieved. 

The Veteran's low back disability manifests as painful limited motion with weakness, stiffness, lack of endurance, pain on weightbearing, tenderness, and spasm. These symptoms are adequately contemplated by the rating criteria set forth in the General Rating Formula combined with the factors set forth in 38 C.F.R. §§ 4.40, 4.45, and 4.59. The Veteran uses a back brace. This in and of itself is not a symptom. Instead, it is a method by which a symptom is relieved. As discussed above, the Veteran's functional loss, including the symptoms that cause him to use a back brace, are contemplated adequately by the rating criteria. 

The rating criteria applied in this case are adequate with respect to the Veteran's left knee and low back disabilities. The criteria practicably represent the average impairment in earning capacity resulting from the Veteran's service-connected left knee and low back disabilities, such that he is adequately compensated for "considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." See 38 C.F.R. § 4.1 (2015). Further, no examiner has reported an exceptional disability picture with symptoms not represented in the rating schedule. Accordingly, the Board has determined that remand for referral of this case for extraschedular consideration is not in order for his left knee or low back disabilities. 

The Board notes that under Johnson v. McDonald, 762 F. 3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected symptoms experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected symptoms that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple service-connected conditions. 

It is important to acknowledge that the Board is remanding a claim for entitlement to a TDIU. Although both the extraschedular and TDIU aspects of the appeal may concern a Veteran's employability, the TDIU issue is not being remanded in this case due to an incomplete record regarding the effect on employability of the service-connected disabilities claims decided. Johnson v. Shinseki, 26 Vet. App. 237, 247-48 (2013), reversed, on other grounds, 762 F.3d 1362 (Fed. Cir. 2014). Rather, it is being remanded to afford the Veteran his right to one-review on appeal for that issue. See 38 U.S.C.A. § 7104 (West 2014); Bernard v. Brown, 4 Vet. App. 384, 394 (1993). 

Additionally, in Brambley v. Principi, 17 Vet. App. 20 (2003), the Court noted that the Board's remand of a TDIU claim for additional record development was inconsistent with a finding that the record was sufficient to conclude that the Veteran's service-connected disability did not produce a marked interference with employment for the purposes of extraschedular consideration. The situation in Brambley is distinguishable from this case, where the Board has found that the schedular criteria adequately contemplate the level of the Veteran's left knee and low back disabilities and it need not address whether they result in marked interference with employment. Accordingly, unlike the decision at issue in Brambley, the Board is not maintaining "divergent positions concerning the completeness of the record." See Brambley at 24. Therefore, the extraschedular consideration can be resolved at this time. These matters are not intertwined. 


ORDER

An initial disability rating in excess of 10 percent for a left knee disability is denied. 

An initial disability rating in excess of 10 percent for a low back disability prior to April 11, 2011 is denied.

A 40 percent disability rating is granted for the Veteran's low back disability, effective April 11, 2011, subject to the laws and regulations governing the payment of monetary benefits.

A separate, noncompensable disability rating for erectile dysfunction is granted, subject to the laws and regulations governing the payment of monetary benefits.


REMAND

The Veteran submitted a timely April 2013 NOD to the March 2013 rating decision that denied service connection for sleep apnea. However, the AOJ has yet to promulgate a Statement of the Case (SOC) with regard to this issue. This claim must be remanded to the AOJ for issuance of an SOC. 38 C.F.R. §19.9(c) (2015); see also Manlincon v. West, 12 Vet. App. 238 (1999); Godfrey v. Brown, 7 Vet. App. 398, 408- 410 (1995). However, the Board emphasizes that the Veteran must perfect his appeal in order to obtain appellate review. See 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 20.200, 20.201, 20.202 (2015).

As indicated above, there is evidence that the Veteran's service-connected disabilities have impacted his employability. The issue of entitlement to a TDIU has thus been raised by the evidence of record. See Rice, 22 Vet. App. at 453. A remand is therefore warranted for the AOJ to consider this issue in the first instance, to include any appropriate development.

Accordingly, the case is REMANDED for the following action:

1. Issue the Veteran a Statement of the Case, accompanied by notification of his appellate rights, which addresses the issue of entitlement to service connection for sleep apnea. 

2. After undertaking any preliminary action needed to resolve the issue, adjudicate the issue of entitlement to a TDIU. If the benefit sought on appeal remains denied, in whole or in part, the Veteran and his representative must be provided with a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond. The case should then be returned to the Board for further appellate review, if otherwise in order. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs